DECISION
This matter came before the Court as an enforcement proceeding. Although the Complaint is captioned as one for injunctive relief, the Court believes that its jurisdiction has been invoked by the Coastal Resources Management Council ("CRMC" or "the Council") pursuant to G.L. 1956 § 46-23-7.2 to enforce orders previously issued by CRMC against Kenneth Harris ("Harris"), relative to his operation of a marina on Rocky Hollow Road (and adjacent structures in tidal waters) in the Town of East Greenwich.
The CRMC came before this Court on May 24, 2011 seeking enforcement of a Cease and Desist Order issued on May 26, 2010 and an Assented to Order signed by Harris, his attorney, and representatives of CRMC on September 22, 2010. Pursuant to these orders, Harris has been ordered to remove the structures (floating docks and associated structures) which he currently maintains in the coastal zone, without a permit from CRMC. Harris has operated a marina in Greenwich Cove since 1979, yet he has never received the requisite authority from CRMC to maintain structures in coastal waters, over which CRMC has jurisdiction. General Laws § 46-23-6(2)(ii)(A) provides that the CRMC has exclusive jurisdiction for all development and *Page 2 
operations in tidal waters below mean high water in the coastal waters of this State. Any person or firm proposing any development or operation within such tidal waters must obtain authority from CRMC to do so, in accordance with the resource management plan and regulations promulgated by the CRMC.
The facts of this case show that Harris' marina operates within the jurisdictional waters regulated by CRMC, but has not received permission to do so from CRMC. The Harris Marina operation pre-existed the establishment of CRMC, and, according to testimony from Grover Fugate, the Executive Director of CRMC could have been granted "grandfather" status without further permission in one of two ways:
 (1) Between 1994 and 1999, the General Assembly established a period of forgiveness during which all coastal operations that pre-existed the formation of the CRMC could apply for "grandfather" status. Or,
 (2) without having applied during this the forgiveness period, a coastal operation could apply to the Army Corps of Engineers ("ACOE") for a "grandfather" determination, in which case the CRMC would honor such determination, and not otherwise require compliance with the Coastal Zone Management Plan (regulations) of CRMC.
Absent qualifying for grandfather status as outlined above, Harris would need to apply to the CRMC for a new marina permit, in which case current regulations would control. As of the date of the hearing, Mr. Harris had not been certified for "grandfather" status and has no current application pending before the Council for regulatory authority to operate in tidal waters.[1]
Because Harris neither obtained grandfather status, nor obtained permission to operate his marina in Type 1 waters, CRMC issued a Cease and Desist Order and levied an administrative fine on or about May 26, 2010. Harris did not comply with the Cease and Desist Order by removing his marina structures from the coastal waters. Therefore, the CRMC at its semi-monthly *Page 3 
meeting of June 8, 2010, considered the implications of Harris' current status.[2] The Cease and Desist Order was discussed at the June 8 meeting, and it was noted that neither the Cease and Desist Order nor the administrative fine, both levied on May 26, 2010, was appealed to the full Council. Therefore, at the June 8 hearing, Harris, through counsel, recorded a written motion to rescind the Cease and Desist Order but the Council did not act upon that motion. Also at the June 8 meeting, a verbal motion was made on behalf of Harris to appeal the fine levied on May 26, 2010, but that motion to appeal was rejected as not timely.
Also at the June 8 meeting, counsel for Harris advised CRMC that Harris had not yet obtained a "grandfather" permit from ACOE. The Council advised Harris and his counsel that absent the ACOE permit (to recognize The Harris Marina as a marina considered "grandfathered" by reason of it having been placed in operation prior to the Coastal Zone Management program), that the Council was severely limited in its ability to permit The Harris Marina to continue to operate structures in the coastal zone. Under the circumstances, the CRMC could allow continued operations only by consideration of a new application to operate the marina according to existing regulations. Since the marina structures are located in Type I waters and according to CRMC testimony are prohibited in such waters, the application would have to be considered for a special exception, which under the regulations requires meeting regulatory conditions that according to CRMC testimony would be difficult but not impossible to meet. During these various proceedings before the CRMC, Harris clearly was advised of the procedure for obtaining an ACOE permit thereby obviating the need for a new marina application. Unfortunately, Harris was unable to obtain approved "grandfather" status from ACOE. *Page 4 
Apparently, neighboring marinas were able to obtain such ACOE permits, and therefore, operate as grandfathered under CRMC regulations. Harris believes the neighboring marinas share the same longevity as The Harris Marina and as to "grandfather" status should have been treated equally by the regulatory authorities.[3]
Although not required, the CRMC at its June 8 meeting entertained a motion to allow Harris to operate the unpermitted marina for the 2010 boating season, while Harris continued his efforts to obtain "grandfather" status from ACOE. The motion was approved by the Council on the condition that at the end of the 2010 boating season (on or before October 31, 2010) the offending structures were to be removed. This limited and temporary right to continue to operate through October 31, 2010, was designed to allow Harris additional time to seek the grandfather permit from ACOE, while continuing to operate during the 2010 "boating season." In fact, Harris through counsel indicated to the CRMC at the June 8 meeting that it was his intention to continue his efforts with the ACOE. After the June 8 meeting, counsel for CRMC and Harris met to draft an agreed upon form of Order to reflect the time-limited consent to operate through the end of the 2010 boating season. Once the language was agreed upon, it was prepared as an "Assented to Order of the Rhode Island Coastal Resources Management Council." The Order was signed by the parties and their respective counsel. Through this Consent Order Harris was obliged to remove his structures in tidal waters on or before October 31, 2010, unless he obtained the necessary administrative permits and approvals. The Order provided further in Paragraph 9 as *Page 5 
follows: "Respondent and CRMC agree that the provisions of this agreed upon order will be enforceable in the Superior Court consistent with CRMC's statutory authority." Notwithstanding the fact that the form of the Order was agreed, the Order was to carry the full force and effect of an Order of the Council. The fact that the form of the Order was agreed to, does not diminish the lawful effect of this Order, as it reflected the decision of the Council made at its June 8 meeting. As a final Order of an administrative agency, the only proper procedure to contest its validity was through appeal to the Superior Court in accordance with G.L. § 42-35-15 within thirty days of the entry of the Order. Harris failed to avail himself of such judicial review, and should not be permitted to "end-run" accepted appellate remedies by asserting issues that could have been the subject of judicial review, by asserting the very same issues by way of defenses and counterclaims in a judicial enforcement proceeding.
By October 31, 2010, Harris had not obtained permit assent from the CRMC either under grandfather status or otherwise, and failed to remove the structures in tidal waters. Absent appeal, stay or reversal of the administrative Order by the Superior Court, the Order stands as a fully enforceable Order of the CRMC, and subject to enforcement proceedings in this Court. Harris has attempted to raise, through his responsive pleading herein, defenses that relate to whether Harris was treated differently than other marinas in Greenwich Cove, which have allegedly been allowed to operate without CRMC assent. Issues of equality of treatment by the agency are issues subject to judicial review under § 42-35-15(g), and having failed to raise such issues on appeal from the administrative Order, the final Order of the CRMC remains as originally issued.
While this Court is aware of the economic difficulty that enforcing of the orders will have on Mr. Harris (who is a man more than seventy years old), the Court believes that the CRMC has *Page 6 
shown extraordinary patience with respect to working with Mr. Harris to allow his operations to continue through the 2010 boating season and up to the time of filing of this enforcement action. A time comes, however, when the available remedies have either been ignored by the marina or not tested by way of appeal of a final Order. Under such circumstances the credibility of CRMC's orders can no longer be avoided, and this Court must respect the Council's authority by enforcing its final orders. Mr. Harris could have avoided the problems he now faces either by obtaining an ACOE permit or by appealing its denial through appropriate federal procedures for judicial review of actions of federal agencies, and bringing such permit to the CRMC, or by filing a completed application for approval of the marina structures. The fact that such structures are prohibited in Type I waters, still leaves open the possibility that Harris could meet the criteria for a special exception, as difficult as those standards might be. Harris' failure to exhaust his administrative remedies leaves this Court with but one choice. Harris has not presented any evidence to suggest that the CRMC orders are not in full force and effect.
 CONCLUSION
The Court finds that the Cease and Desist Order of May 26, 2010, and the Assented to Order of September 2010 (arising from the Council's vote on June 8, 2010) are both final, valid and enforceable orders of the CRMC. The Plaintiff's Petition to Enforce is granted, and the Defendant must comply with the provisions of said orders forthwith, including, but not limited to, the requirement that he remove all docks, floats and related structures in tidal waters, unless and until he obtains proper CRMC approval to maintain such structures in the tidal waters of this State. Judgment shall enter reflecting this enforcement decision.
[1] According to testimony, an earlier application was not accepted for consideration by CRMC because it was deemed incomplete.
[2] The June 8, 2010, hearing was a continuation of a prior hearing commenced on March 23, 2010, wherein the Council considered the consequences of Harris' failure to apply for a new marina permit or to obtain a grandfather permit from ACOE.
[3] One of the neighboring marinas is owned and operated by relatives of former Governor Carcieri, and Harris believes that he was treated less favorably in order to enhance the economic viability of the neighboring marina operations. Raising such defenses to this enforcement proceeding is not the proper forum within which to adjudicate such concerns, when the CRMC and ACOE decisions were not timely appealed in accordance with applicable procedures for judicial review. It should be noted that disparate treatment by the agency would be a proper subject of an appeal under the Rhode Island Administrative Procedures Act.See § 42-35-15(g)(1), (5), and (6). *Page 1